Filed 3/23/22  P. v. Smith CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D078320 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD137023) |
| MARQUELL DION SMITH, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

Marquell Dion Smith appeals from the summary denial of a petition to vacate his first degree murder conviction under Penal Code section 1170.95.[1] The trial court found Smith was not entitled to relief, as a matter of law, because the jury that convicted him of murder returned a true finding on a robbery-murder special-circumstance allegation associated with the murder charge. The special-circumstance finding meant the jury found that Smith: (1) was the actual killer; (2) aided and abetted in the commission of the murder with an intent to kill; or (3) aided and abetted in the commission of the robbery while acting as a major participant and with reckless indifference to human life. (§ 190.2, subds. (b)–(d).)

After the trial court denied Smith's resentencing petition, our court determined that a true felony-murder special-circumstance finding does not categorically preclude resentencing under section 1170.95 where, as here, the true finding was made prior to *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)—Supreme Court decisions that clarified the meaning of the special-circumstances statute. (*People v. Arias* (2021) 66 Cal.App.5th 987, review granted September 29, 2021, S270555 (*Arias*); *People v. Wilson* (2021) 69 Cal.App.5th 665, review granted December 22, 2021, S271604 (*Wilson*).) In accordance with our recent precedents, we conclude the trial court erred insofar as it found that the true robbery-murder special-circumstance finding necessarily precluded resentencing relief as a matter of law.

Nonetheless, the entire record of conviction before us demonstrates, beyond a reasonable doubt, that Smith was, at minimum, a major participant

---

[1] Undesignated statutory references are to the Penal Code.

2

in the underlying robbery who acted with reckless indifference to human life, as those requirements were construed in *Banks* and *Clark*. Therefore, Smith failed to make a prima facie showing of entitlement to resentencing relief. On this basis, we affirm the order denying Smith's resentencing petition.

## II

## BACKGROUND

### A

*Smith's Murder Conviction*

The following factual background is taken from this court's opinion in *People v. Smith* (Mar. 5, 2004, D035500) [nonpub. opn.] (*Smith I*).

Between November 7, 1997 and February 18, 1998, Smith and Lazair Carter committed dozens of armed robberies of commercial establishments in the San Diego area. (*Smith I, supra*, D035500.) The crimes were known as the Tri-Cities robberies. (*Ibid.*) They differed in their specifics, but typically entailed two or three African American males wearing masks and gloves, carrying guns, taking money from a cash register, demanding access to a safe, and taking money from customers and employees. (*Ibid.*) Frequently, the robbers violently hit employees in the head with a gun. (*Ibid.*) During one robbery, a store owner named Salim Gappy grabbed a revolver and fired it several times, causing the robbers to return fire and flee. (*Ibid.*)

On February 18, 1998, Smith and Carter committed an armed robbery of a liquor store during which the 19-year old store clerk, Adrian Garmo, was killed. (*Smith I, supra*, D035500.) Surveillance videotape "showed Carter wrestling with the clerk, who was trying to pull off Carter's … mask. Smith reached over the counter and pointed a .38 caliber handgun at the clerk. Garmo was shot and killed by a single gunshot to the chest." (*Ibid.*) According to a prosecution witness, Carter told the witness that the ".38

3

caliber gun was 'dirty' and that Smith had been carrying that weapon."
(*Ibid.*)  Carter reportedly confessed "he had been carrying a .25 caliber gun"
during the fatal robbery.  (*Ibid.*)

On December 20, 1999, a jury found Carter and Smith guilty of the first
degree murder of Adrian Garmo (§ 187, subd. (a)) and, for both defendants,
the jury returned true findings on personal use of a firearm allegations
(§ 12022.5, subd. (a)(1)) and robbery-murder special-circumstance allegations
(§ 190.2, subd. (a)(17)).  (*Smith I, supra*, D035500.)  It found the defendants
guilty of the attempted murder of Salim Gappy (§§ 187, 664) and, for both
defendants, it returned true findings on associated personal use of a firearm
allegations (§ 12022.5, subd. (a)(1)).  (*Ibid*.)  The defendants were found guilty
of dozens of other crimes arising from the Tri-Cities robberies as well.[2]
(*Ibid.*)  The trial court sentenced Smith to prison for life without the
possibility of parole, plus 206 years, and it sentenced Carter to prison for life
without the possibility of parole, plus 270 years and 8 months.  (*Ibid.*)

On direct appeal, this court struck a parole revocation fine, but in all
other respects affirmed the judgments.  (*Smith I, supra*, D035500.)  The
Supreme Court denied review on May 19, 2004.

B

*Senate Bill No. 1437*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437
"to amend the felony murder rule and the natural and probable consequences
doctrine, as it relates to murder, to ensure that murder liability is not

---

[2]    Smith was found guilty of 8 counts of attempted robbery, 39 counts of
robbery, 15 counts of assault with a firearm, and 12 counts of being a felon in
possession of a firearm, among other crimes.  (*Smith I, supra*, D035500.)
Carter was found guilty of 11 counts of attempted robbery, 57 counts of
robbery, 18 counts of assault with a firearm, and 16 counts of being a felon in
possession of a firearm, among other crimes.  (*Ibid.*)

4

imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 effectuated this goal in part by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, § 3.) The amended version of section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Amended section 189, subdivision (e), states: "A participant in the perpetration or attempted perpetration of a felony listed in [section 189] subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

Senate Bill No. 1437 also enacted section 1170.95, "which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) Under section 1170.95, an offender must file a petition with the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is

5

imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

Under section 1170.95, subdivision (b)(1), a resentencing petition must include "(A) A declaration by the petitioner that the petitioner is eligible for relief … based on all the requirements of [section 1170.95,] subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) "If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' (§ 1170.95, subd. (b)(2).)" (*Lewis, supra*, 11 Cal.5th at p. 960.)

"Where the petition complies with subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra*, 11 Cal.5th at p. 960.) If the trial court determines a prima facie showing for relief has been made, it issues an order to show cause, and then must hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

6

At the hearing, the burden is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).) The court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as "the procedural history of the case recited in any prior appellate opinion." (*Ibid.*) Additionally, the parties may "offer new or additional evidence to meet their respective burdens." (*Ibid.*)

C

*Smith's Resentencing Petition*

On October 7, 2019, Smith filed a pro per petition to vacate his murder conviction and to be resentenced under section 1170.95.

On December 13, 2019, the People, represented by the district attorney, filed a motion to deny Smith's resentencing petition. The People argued the petition should be denied because Smith failed to make a prima facie showing of eligibility for relief under section 1170.95. According to the People, the evidence from trial showed Smith was the actual killer. Further, the People argued the robbery-murder special-circumstance finding meant the jury necessarily found that Smith, at minimum, aided and abetted in the commission of the robbery while acting as a major participant and with reckless indifference to human life. The People asserted that under either scenario, Smith could still be convicted of murder under amended sections 188 and 189; therefore, he was not entitled to resentencing.

On January 13, 2020, Smith filed an amended resentencing petition. In the amended petition, Smith placed checkmarks next to the following preprinted statements: "1. A complaint, information, or indictment was filed

7

against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] 2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; … [¶] [and] 3. I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code § § [sic] 188 and 189, effective January 1, 2019." Together with the amended petition, Smith filed a 23-page statement of facts purporting to summarize his murder trial and the facts giving rise to his convictions.

On June 2, 2020, the trial court appointed legal counsel for Smith. With the assistance of appointed counsel, Smith filed a reply brief in support of his amended resentencing petition.

On November 4, 2020, the trial court summarily denied Smith's amended resentencing petition without issuing an order to show cause. Relying on *People v. Gomez* (2020) 52 Cal.App.5th 1, review granted October 14, 2020, S264033 (*Gomez*), the court determined the jury's true finding on the robbery-murder special-circumstance allegation precluded resentencing relief as a matter of law.

III

DISCUSSION

A

*Standard of Review*

"Because we are tasked with applying the section 1170.95, subdivision (c) standard governing prima facie entitlement to relief [citation], our review is de novo. [Citation.] As with any case involving statutory interpretation, our primary goal is to ascertain and effectuate the lawmakers' intent. [Citation.] [¶] In applying the de novo standard, we accept the

8

pleaded facts as true [citation], but evaluate those facts in light of facts readily ascertainable from the record of conviction," including our opinion in *Smith I, supra*, D035500. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 244 (*Secrease*), review granted June 30, 2021, S268862; see also *Lewis, supra*, 11 Cal.5th at p. 972 [noting that appellate opinions "are generally considered to be part of the record of conviction," but cautioning that "the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers' "].)

B

*A True Felony-Murder Special-Circumstance Finding Made Prior to Banks and Clark Does Not Categorically Preclude Resentencing*

The issue presented in this appeal is whether the trial court erred in summarily denying Smith's resentencing petition after finding that he failed to make a prima facie showing of entitlement to relief under section 1170.95.

The People urge us to affirm the court's order on grounds that the convicting jury found true a robbery-murder special-circumstance allegation associated with Smith's murder conviction. In order to reach a true felony-murder special-circumstance finding, a jury must find that a defendant was the actual killer, aided and abetted in the commission of the murder with an intent to kill, or aided and abetted in the commission of the felony while acting as a major participant and with reckless indifference to human life. (§ 190, subds. (b)–(d).) Because these requirements are identical to the felony murder requirements under the amended version of section 189, subdivision (e), the People claim Smith cannot prove one of the elements necessary to obtain resentencing—to wit, that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3).)

9

Smith argues the robbery-murder special-circumstance finding did not categorically bar him from making a prima facie showing of entitlement to relief under section 1170.95. He notes the jury returned its true special-circumstance finding in 1999, before *Banks, supra*, 61 Cal.4th 788, and *Clark, supra*, 63 Cal.4th 522. In those decisions, the Supreme Court "clarified the meaning" of the special-circumstance statute (§ 190.2). (*In re Scoggins* (2020) 9 Cal.5th 667, 671.)

As we will explain, we agree with Smith that a pre-*Banks* and *Clark* felony-murder special-circumstance finding, standing alone, does not necessarily preclude a defendant from obtaining resentencing relief under section 1170.95.

1

*Banks and Clark*

The special-circumstance statute sets forth a list of "crimes deemed sufficiently reprehensible to warrant possible punishment by death" or life imprisonment without the possibility of parole (LWOP). (*Banks, supra*, 61 Cal.4th at p. 797, citing § 190.2, subd. (a).) It "extends death [or LWOP] eligibility not only to killers, but also to certain aiders and abettors of first degree murder." (*Ibid.*, citing § 190.2, subds. (c), (d).) In the case of first degree felony murder, it states that a person who is not the actual killer may nonetheless be subject to the punishment of death or LWOP if the person, "with reckless indifference to human life and as a major participant," aids and abets the crime resulting in the death of a person or persons. (§ 190.2, subd. (d).) "The statute thus imposes both a special actus reus requirement, major participation in the crime, and a specific mens rea requirement, reckless indifference to human life." (*Banks*, at p. 798.)

10

*Banks* considered and applied both the actus reus (major participant) and the mens rea (reckless indifference) requirements, but it focused its attention primarily on the actus reus requirement. It identified the following factors as relevant in determining whether a defendant was a major participant in a crime: what role the defendant had in planning the criminal enterprise that led to one or more deaths; what role the defendant had in supplying or using lethal weapons; what awareness the defendant had of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants; and whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the actual murder, or played a particular role in the death. (*Banks, supra*, 61 Cal.4th at p. 803.) As the Supreme Court explained, "[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

*Clark* addressed the mens rea requirement of the special-circumstance statute. The mens rea requirement has "subjective and objective elements." (*Clark, supra*, 63 Cal.4th at p. 617.) "The subjective element is the defendant's conscious disregard of risks known to him or her," while the objective element considers "what 'a law-abiding person would observe in the actor's situation.' " (*Ibid.*) *Clark* identified the following factors, many of which overlap with the *Banks* factors, as pertinent to whether a defendant acted with reckless indifference to human life: the defendant's knowledge that weapons would be used and/or his personal use of weapons; the defendant's physical presence at the scene and his opportunity to restrain the killer or aid the victim; the duration of the felony; the defendant's knowledge

11

of his accomplice's propensity to kill; and the defendant's efforts to minimize the risk of violence in the commission of the felony. (*Id.* at pp. 618–623.)

2

*Application of Banks and Clark in Section 1170.95 Proceedings*

"In the years immediately following the decisions in *Banks* and *Clark,* courts applied the standards enunciated in those cases in the setting of habeas corpus [citation], and in section 1170.95 resentencing proceedings that had been preceded by a successful collateral attack on a felony-murder special-circumstance finding based on *Banks* and *Clark* [citation]." (*Secrease, supra,* 63 Cal.App.5th at p. 252, review granted.) Since then, the *Banks* and *Clark* standards have been considered in another context—in section 1170.95 resentencing proceedings that were *not* preceded by a successful collateral attack on a felony-murder special-circumstance finding. Within this context, the Courts of Appeal are divided on whether a pre-*Banks* and *Clark* felony-murder special-circumstance finding categorically bars a defendant from making a prima facie showing that he or she is entitled to resentencing relief.

"[S]ome courts now hold a section 1170.95 petitioner must always mount a successful collateral attack on a prior felony-murder special-circumstance finding against him—no matter when it was made—and until he does so, he cannot plead a prima facie case under section 1170.95,

subdivision (c) as a matter of law."[3] (*Secrease, supra*, 63 Cal.App.5th at p. 252, review granted.) "The courts so holding point out that major participation and reckless disregard of human life have always been required elements of a special circumstance finding under section 190.2, subdivisions (a)(17) and (d). And because revisiting those issues in a section 1170.95 proceeding, ' "in effect," ' amounts to an attack on a valid special circumstance finding, these courts take the view that a defendant in [Smith's] position must first invalidate the special circumstance finding before he may seek section 1170.95 relief. [Citations.] In this view, it is not the changes to sections 188 and 189 that potentially render such a defendant's murder conviction invalid under current law; it is the *Banks* and *Clark* decisions that have that effect, which is why the remedy of habeas corpus must be sought in the first instance." (*Id.* at pp. 252–253.)

"Other courts do not impose a requirement that a section 1170.95 petitioner who seeks resentencing in the face of a prior jury finding under section 190.2, subdivision (a)(17) must first obtain habeas relief, and hold that he may opt to pursue relief by attacking his murder conviction—not his special circumstance finding—on the ground that, under current law as

---

[3] See *Gomez, supra*, 52 Cal.App.5th at p. 17, review granted; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted October 14, 2020, S264284; *People v. Jones* (2020) 56 Cal.App.5th 474, 483–484, review granted January 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Murillo* (2020) 54 Cal.App.5th 160, 168, review granted November 18, 2020, S264978 (*Murillo*); *People v. Nunez* (2020) 57 Cal.App.5th 78, 95–96, review granted January 13, 2021, S265918 (*Nunez*); cf. *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419–420 [rejecting claimed entitlement to § 1170.95 relief raised in appeal of murder conviction on the ground jury's special-circumstance finding rendered appellant ineligible for resentencing as a matter of law].)

13

revised by Senate Bill 1437, he could no longer be convicted of murder."[4] (*Secrease, supra*, 63 Cal.App.5th at p. 253, review granted.) "According to these courts, if the petitioner obtains vacatur of a prior special circumstance finding in a section 1170.95 proceeding, that is because the statute expressly requires it as a 'collateral consequence' of the resentencing relief to which a successful section 1170.95 petitioner is entitled. [Citation.] [¶] These courts see no basis to graft what is, in effect, an exhaustion requirement onto section 1170.95, thereby forcing petitioners with felony-murder special-circumstances findings to obtain habeas relief first, before seeking section 1170.95 resentencing. In their view, because *Banks* and *Clark* 'construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute' [citation], it is not appropriate to give a pre-*Banks* and *Clark* felony-murder special-circumstance finding preclusive effect. As [one] panel … explained, '[i]t would be inappropriate to "treat[ ] [such] findings as if they resolved key disputed facts" when the jury did not have the same questions before them.' " (*Id.*, at pp. 253–254.)

---

[4]    See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179–1180, abrogated on another ground in *Lewis, supra*, 11 Cal.5th at pp. 961–970; *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835 (*Smith*); *People v. York* (2020) 54 Cal.App.5th 250, 259–261, review granted November 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956–958, review granted April 28, 2021, S267802 (*Harris*); *Secrease, supra*, 63 Cal.App.5th at pp. 244–245, review granted; *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 430–431, review granted August 18, 2021, S269792; *Arias, supra*, 66 Cal.App.5th at pp. 1003–1004, review granted; *Wilson, supra*, 69 Cal.App.5th at pp. 677–678, review granted; *People v. Ervin* (2021) 72 Cal.App.5th 90, 95; *People v. Mejorado* (2022) 73 Cal.App.5th 562, 570–571.

*A Collateral Attack on a True Felony-Murder Special-Circumstance Finding Is Not a Prerequisite to Relief Under Section 1170.95*

The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion to the subject. The issue is currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. (*People v. Strong*, review granted Mar. 10, 2021, S266606 ["This case presents the following issue: Does a felony-murder special circumstance finding (Pen. Code, § 190.2, subd. (a)(17)) made before *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 preclude a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95?"].) Given this context, we need not add to the conversation with further extensive argument or analysis.

Rather, it will suffice for us to follow the path our court has already charted in *Arias, supra*, 66 Cal.App.5th 987, review granted, and *Wilson, supra*, 69 Cal.App.5th 665, review granted, decisions we issued subsequent to the trial court order at issue here. In those decisions, we concluded pre-*Banks* and *Clark* true felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95 as a matter of law. (*Arias,* at pp. 1003–1004; *Wilson*, at pp. 677–678; but see *Gomez, supra*, 52 Cal.App.5th at p. 17, review granted.)

In accordance with these precedents, we conclude the trial court erred when it summarily denied Smith's resentencing petition based solely on the existence of a true felony-murder special-circumstance finding.

*Smith's Special-Circumstance Finding Remains Valid Under Banks and Clark, Thus Precluding a Prima Facie Showing of Entitlement to Relief*

Although a pre-*Banks* and *Clark* felony-murder special-circumstance finding does not *automatically* preclude resentencing relief, that fact alone does not require us to reverse and remand the matter for the trial court to issue an order to show cause. Rather, for the reasons stated in *Secrease*, we believe we must conduct an individualized review of Smith's record of conviction to determine whether his special-circumstance finding satisfies the *Banks* and *Clark* standards. As the *Secrease* court explained:

> The most natural reading of section 1170.95 … is that where a petitioner facing a felony-murder special-circumstance finding has never been afforded a *Banks* and *Clark* sufficiency-of-the-evidence review—by any court, at the trial or appellate level—section 1170.95 courts have an obligation to undertake such an analysis at the prima facie entitlement-to-relief stage of a resentencing proceeding under subdivision (c) of the statute. And on appeal from the denial of a section 1170.95 petition for failure to state a prima facie case for relief in such a situation, we have an obligation to do so as well.

(*Secrease, supra*, 63 Cal.App.5th at p. 255, review granted; see *Arias, supra*, 66 Cal.App.5th at pp. 1004–1006, review granted [reviewing record of conviction to determine whether true robbery-murder special-circumstance finding satisfied *Banks* and *Clark* standards]; accord *Wilson, supra*, 69 Cal.App.5th at pp. 677–678, review granted [recognizing an appellate court may decide whether a petitioner is ineligible for resentencing relief as a

16

matter of law, but declining to conduct the analysis because the parties did not brief the petitioner's ineligibility in their appellate briefing].)[5]

Our review of the record of conviction shows that the true robbery-murder special-circumstance finding clearly satisfied the *Banks* and *Clark* standards. As discussed in *Smith I, supra*, D035500, Smith was physically present at the liquor store where Garmo was shot and killed. Indeed, he personally "reached over the counter and pointed a .38 caliber handgun" at Garmo while Smith and Garmo were wrestling one another. (*Smith I, supra*, D035500.) Smith surely was aware of the risk of danger associated with the robbery, given that he had already perpetrated numerous robberies during which he and his accomplices committed violent acts against others. One prior robbery even ended with an exchange of gunfire—an incident for which Smith was found guilty of attempted murder and found to have personally used a firearm. Further, the jury found Smith personally used a firearm during the robbery that left Garmo dead. Given these circumstances, which

_____

[5] See also *Harris, supra*, 60 Cal.App.5th at p. 958, review granted [courts can determine resentencing eligibility "after reviewing the available record of conviction in light of the *Banks* and *Clark* factors"]; *Nunez, supra*, 57 Cal.App.5th at pp. 97–98, review granted (conc. opn. of Ashmann-Gerst, J.) [true special-circumstance finding precluded resentencing because it satisfied *Banks* and *Clark*]; accord *Murillo, supra*, 54 Cal.App.5th at pp. 169–173, review granted [resentencing was properly denied because "record of conviction establishe[d] as a matter of law that the jury's special circumstance finding [was] valid under the standards established by *Banks* and *Clark*"]; *People v. Law* (2020) 48 Cal.App.5th 811, 825–826, review granted July 8, 2020, S262490 [resentencing denial based solely on pre-*Banks* and *Clark* special-circumstance finding was error, but "harmless" because "the record" showed defendant was a major participant who acted with reckless indifference]; but see *Smith, supra*, 49 Cal.App.5th at pp. 95–96, review granted [error for appellate court to "conduct [its] own assessment of the trial evidence to determine whether [defendant] was a major participant and acted with reckless indifference to human life"].)

17

are shown in the record of conviction, there can be no reasonable doubt that Smith, at the very least, was a major participant who acted with reckless indifference to human life (as those terms were clarified in *Banks* and *Clark*).

Smith argues that reversal and remand is required because the record of conviction does not conclusively establish that he was the actual killer. Even if we accept Smith's claim that he was not the actual killer, it does not change the outcome. Under current law, a person may still be convicted of felony murder even if the person was not the actual killer, so long as he or she aided and abetted in the commission of first degree murder with an intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e)(2)–(3).)

For all the reasons previously discussed—namely, the string of violent acts perpetrated by Smith and his accomplices during prior robberies and robbery attempts, the exchange of gunfire that erupted during one of these prior robberies, Smith's physical presence at the murder scene, the fact Smith pointed a firearm directly at the murder victim, and the jury's finding that Smith personally used a firearm during the murder and several other violent crimes—the record of conviction conclusively establishes that Smith was, at minimum, a major participant in the underlying robbery and that he acted with reckless indifference to human life. Thus, Smith could not—and did not—make a prima facie showing of entitlement to resentencing relief.

IV

DISPOSITION

The order denying the resentencing petition is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

HALLER, J.